UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUTH L. PAUL, ) | |
| ) | CASE NO. C10-5816-RSL |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner ) | APPEAL |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Ruth L. Paul proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1956.[1] She completed two years of college (AR 140) and previously worked as a driver, manager, treatment attendant, and waitress (AR 121, 135). Plaintiff filed an application for DIB in March 2006, alleging disability beginning December 31, 1995 due to fibromyalgia, depression, a sleep disorder, and back pain. (AR 85-87, 134.) She remained insured for DIB through June 30, 1997 (AR 118) and was, therefore, required to establish disability on or prior to that "date last insured" (DLI). *See* 20 C.F.R. §§ 404.131, 404.321. Plaintiff's application was denied at the initial level and on reconsideration, and she timely requested a hearing.

ALJ Verrell Dethloff held a hearing on September 26, 2008 and took testimony from plaintiff and her sister-in-law, Donna Paul. (AR 22-45.) On October 15, 2008, the ALJ issued a decision finding plaintiff not disabled. (AR 14-21.)

Plaintiff timely appealed. The Appeals Council, on September 8, 2010, denied plaintiff's request for review (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. Although finding that plaintiff had the medically determinable impairments of degenerative disc disease and a history of pelvic adhesions, the ALJ concluded that plaintiff did not have a severe impairment or combination of severe impairments. Having concluded as such, the ALJ did not proceed through the remainder of the sequential evaluation process, and found plaintiff not disabled at any time from her alleged onset date through June 30, 1997, her DLI.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in finding she did not have any severe impairment or combination of impairments at step two. She further avers errors in the assessment of the medical evidence, her testimony, and the lay testimony. Plaintiff also contends that the ALJ

/ / /

/ / /

should have obtained testimony from a medical expert.[2] Plaintiff requests remand for further administrative proceedings, including a new hearing with a medical expert. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

### Step Two

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. § 404.1520(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.*

The ALJ in this case concluded that, through the DLI, plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related abilities for twelve consecutive months. (AR 17.) In explaining his step

---

[2] Plaintiff's Opening Brief contains a lengthy summary of the evidence. In fact, only nine full pages of the twenty-four page brief contain argument. (*See* Dkt. 12.) Plaintiff's counsel is reminded, as he has been reminded previously by this Court, that such a recitation of the evidence is unnecessary and, in fact, is discouraged. Rather, a discussion of the relevant facts and portions of the administrative record should be conducted in the context of specific assignments of error.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

two decision, the ALJ first described plaintiff's testimony and concluded that her medically determinable impairments "could not have been reasonably expected to cause her alleged symptoms." (AR 18-19; emphasis in original.) He thereafter stated:

> The claimant had been treated for abdominal adhesions and had occasional complaints of back pain that varied from upper to lower back pain. She had some degenerative changes in her back, but there was no evidence of any impairment in her functioning. While she has documented that she did have some changes, these were present for years before her alleged onset date.
>
> In 2000 when the claimant saw a doctor for her complaints, she said that she was taking ibuprofen and vitamins, not the multiple medications she testified to. She testified to chronic fatigue, but there was no evidence of complaints of fatigue on or before her alleged onset date. The claimant reported unusual nightmares, but there is no evidence of this. The claimant admitted that she lied when she applied to be a bus driver. The fact that she is willing to lie when she has financial pressure, tends to cast doubt on her current credibility.
>
> The evidence indicates that the claimant left work when she met and married her husband. In the 1990s she was raising her children who are now adults. She said that she went to school events, drove out of town to visit family and for short term jobs. She said that she prepared meals even though she did not have energy to brush her teeth.
>
> The burden of proof to establish disability rests upon the claimant. A claimant must present "complete and detailed objective medical reports of his condition from licensed medical professionals;" and cannot posit disability on impairments for which he has presented no evidence. It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's [RFC].
>
> In this case the claimant has not presented complete and detailed objective medical reports to support her allegations of disability. The only evidence available makes vague reference to back pain in various places and there is no evidence of the significant limitations to which the claimant had testified. The claimant's attorney said that the claimant had been diagnosed with fibromyalgia since February of 1997. However, the treatment records from Dr. VandenBerg suggest this came diagnosis [stet] much later. He suggests that the claimant was under treatment with another physician, but those records are not available.
>
> As noted, the claimant must demonstrate disability prior to the date last insured.

> The burden of proving that one was disabled prior to the date last insured cannot be met merely by means of conclusory self-serving testimony that one was disabled at the crucial time. Subjective testimony must be supported by objective medical findings establishing a medical impairment at the time at issue. Evidence relating to the level of impairment subsequent to the date last insured is not relevant. An adjudicator must work with the medical evidence available, despite the circumstances causing the absence of relevant evidence. The absence of necessary medical evidence cannot be cured by lay testimony.
>
> The lack of necessary medical evidence in this case prevents me from relying solely on the claimant's self serving testimony. The claimant's sister in law also testified. She said that the claimant did things like a normal housewife, but it knocked her off her feet and she had to recuperate. The fact that there is no evidence to support any condition that might cause these reported symptoms prevents me from finding this testimony credible. She said that the claimant's main problem was upper body pain. There is no evidence to suggest a cause for upper body pain.

(AR 19-20; citations omitted.)

Plaintiff argues that the ALJ's step two finding is not supported by substantial evidence. She points to cervical/thoracic/lumbar strain diagnoses by Dr. Jane Person-Nydam in 1992, 1995, and 1996 (AR 236-39, 242-43), and "a fibromyalgia-like syndrome" diagnosis by Dr. Robert VandenBerg in March 1997 (AR 204). Plaintiff asserts that the ALJ apparently failed to take the latter diagnosis into consideration. She also points to evidence after the DLI as supporting the severity of her conditions. (*See* AR 323 (Dr. VandenBerg, in March 1999, stated that plaintiff "just finds it extremely difficult to straighten up and stand up[,]" and "[p]atient is tender along the lumbar paravertebral muscles and a little bit in the thoracic paravertebral muscles."); AR 247 (neurologist Dr. Gregory Bell assessed "probable fibromyalgia" in April 2001); AR 376 (Dr. David Fairbrook discussed plaintiff's fibromyalgia in August 2005); AR 316 (Dr. VandenBerg, in August 2005, diagnosed cervical strain, currently resolving, and fibromyalgia, chronic).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

Plaintiff argues that, considering the medical evidence and her description of her symptoms and limitations, the record in this case can only reasonably support the conclusion that she has suffered from severe fibromyalgia and cervical-thoracic-lumbar strain since prior to her DLI. *See*, *e.g.*, *Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005) (finding "ALJ's reasons for rejecting Webb's complaints at step two are not substantial enough to meet the 'clear and convincing' standard when balanced against Webb's doctors' contemporaneous observations, some objective tests and Webb's subjective complaints.") She contends that the evidence and testimony demonstrates that her ability to perform basic work activities was significantly impaired prior to her DLI. *See* 20 C.F.R. § 404.1521(b) (examples of basic work activities include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.")

Plaintiff also argues that the ALJ violated SSR 85-28, which states: "If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step." Likewise, SSR 96-3p states that, if an ALJ "is unable to determine clearly the effect of an impairment(s) on the individual's ability to do basic work activities, the adjudicator must continue to follow the sequential evaluation process until a determination or decision about disability can be reached."

The Commissioner notes the absence of any identification in the medical records of

specific limitations in plaintiff's ability to perform basic work-related activities as a result of impairments assessed by Dr. Person-Nydam and Dr. VandenBerg. He avers that the ALJ properly rejected the testimony of plaintiff and her lay witness, as discussed further below. The Commissioner also contends that plaintiff's reliance on SSR 85-28 and 96-3p is misplaced because the ALJ did not find he was unable to determine the effect of plaintiff's impairments or combination of impairments on her ability to perform basic work activities.

Plaintiff, in reply, avers that the Commissioner's assertion with respect to the absence of any assessed limitations is in an improper post hoc rationalization which cannot be used to justify affirming the ALJ's decision. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). She also contends that SSR 85-28 and 96-3p are on point because the ALJ in this case based his step two finding on an erroneous evaluation of the evidence.[3]

A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show that her medically determinable impairments are severe. 20 C.F.R. § 404.1520(c). Social Security regulations require that a claimant's impairment[s] "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement

---

3 Among other arguments in her reply, plaintiff also asserted that the Commissioner presented two different definitions of a severe impairment, pointing to case law as defining a severe impairment as one that "significantly limit[s] [her] physical or mental ability to conduct basic work activities," *Ukolov v. Barnhart*, 420 F.3d 1003-04 (9th Cir. 2005), and SSR 96-3p as stating that "an impairment(s) that is 'not severe' must be a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." She contends that the second definition is correct. However, the Commissioner correctly describes first the regulatory definition of a severe impairment, 20 C.F.R. § 404.1520(c), and, second, the Social Security Administration's interpretation of its regulation in considering impairments found not severe, SSR 96-3p.

of symptoms." § 404.1508. It should also be noted that, as stated by the Ninth Circuit: "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted); *accord Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007) (same).

In this case, there are minimal records dated prior to and soon after the DLI. While these records appear to confirm at least diagnoses related to plaintiff's cervical, thoracic, and/or lumbar strains, the only apparent "signs" supporting the existence of impairments consist of findings of tenderness on examination or pain at "trigger points[,]" the latter of which relate to fibromyalgia and are discussed further below. (*See*, *e.g.*, AR 203-04, 236-39.) *See* 20 C.F.R. § 404.1528(b) ("Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.")[4] Also, while not necessarily determinative of a step two finding, the Commissioner accurately reflects that there is an absence of any assessment of limitations during the relevant time period, which the ALJ

---

4 *See also* 20 C.F.R. § 404.1528(c) ("Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.")

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

recognized in noting the absence of "evidence of any impairment in functioning." (AR 19.)

Further, some of the evidence dated within the relevant time period and relied on by plaintiff could be read to support the ALJ's conclusion. For example, in March 1997, Dr. VandenBerg found "absolutely nothing wrong" with x-rays of plaintiff's cervical, thoracic, and lumbar spine. (AR 204.) (*See also* AR 209 (x-ray findings showed normal results).)

Nor is it clear that Dr. VandenBerg diagnosed plaintiff with fibromyalgia in 1997. The "rule of thumb" for a fibromyalgia diagnosis is identification of at least eleven out of eighteen total tender or trigger spots/points at fixed locations on the body. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *accord Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004) ("The American College of Rheumatology issued a set of agreed-upon diagnostic criteria [for fibromyalgia] in 1990, but to date there are no laboratory tests to confirm the diagnosis."); SSR 99-2p (describing overlap of symptoms between fibromyalgia and Chronic Fatigue Syndrome and noting "American College of Rheumatology criteria for FMS (which includes a minimum number of tender points)"). Dr. VandenBerg, in March 1997, noted "pain in trigger points located on the anterior and lateral thighs along the sternum and the anterior chest, along the neck and the distribution of the sternocleidomastoid[,]" but did not clarify whether this sufficed to support a fibromyalgia diagnosis. He stated specifically that plaintiff's "history is probably compatible with a fibromyalgia-like syndrome." (AR 204.) (*See also id*. (reflecting plaintiff's report that an arthritis doctor "told her there is very little he could offer[]" and recommended anti-inflammatory agents or aspirin, but that plaintiff "really does not like to take medications on a regular basis."))

Records dated after the DLI are similarly of questionable help to plaintiff when read in

full. Dr. VandenBerg's March 1999 notations responded to plaintiff's report of an "acute back injury[,]" resulting from plaintiff "trying to clean and lift yesterday . . . and straining her back." (AR 323.) In April 2001, Dr. Bell, a neurologist, assessed plaintiff with "probable" fibromyalgia. (AR 247.) Dr. VandenBerg's August 2005 report reflects that, while plaintiff has days of muscle aches, fatigue, and some bowel difficulties, her fibromyalgia seemed to be "relatively stable" and she was "doing well." (AR 316.) He also noted that plaintiff was "doing well without the use of chemical substances" and recommended she taper off and discontinue her use of Prozac. (*Id*.) In addition, the cervical strain was reported to be "resolving[,]" and Dr. VandenBerg found her to have "excellent" range of motion. (*Id*.) In February 2006, Dr. VandenBerg reported that plaintiff discontinued another provider's treatment for her fibromyalgia because she found it difficult and stopped her use of Prozac and other medications. (AR 314.)

However, despite the above, the Court is hesitant to recommend that the ALJ's decision be upheld at step two. An ALJ may find a claimant not disabled at step two of the sequential evaluation process. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 974 (9th Cir. 2000) ("If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps.") However, "[a]mple authority cautions against a determination of nondisability at step two." *Ortiz v. Comm'r of Soc. Sec.*, No. 09-17603, 2011 U.S. App. LEXIS 6940 (9th Cir. Jan. 27, 2011) (citing *Bowen v. Yuckert*, 482 U.S. at 140-42; *Webb*, 433 F.3d at 686; and *Smolen*, 80 F.3d at 1290). Further, as recognized by plaintiff, where an ALJ is unable to determine clearly the severity of a claimant's impairments, the sequential evaluation should be continued. SSR 85-28 and 96-3p.

The Court must not, at least with respect to fibromyalgia, "'effectively require[e] "objective" evidence for a disease that eludes such measurement.'" *Benecke*, 379 F.3d at 589-90, 594 (9th Cir. 2004) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)). Given the evidence of physicians' observations of tenderness on examination and pain at trigger points, taken together with the testimony of plaintiff and her lay witness as to symptoms, this is arguably not a case in which plaintiff's impairments should have been deemed non-severe at step two. *Compare Webb*, 433 F.3d at 687 (finding ALJ's reasons "not substantial enough" when balanced against contemporaneous observations of doctors, some objective tests and claimant's subjective complaints; noting "objective medical evidence demonstrating back pain, hypertension, knee pain, hip pain, visual disturbances, memory loss, diverticulitis, lack of sleep, difficulty performing physical tasks and lack of employment from 1991 through 1997."), *with Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.")

Even more concerning, however, are the ALJ's statements regarding Dr. VandenBerg and fibromyalgia. The ALJ reads certain of Dr. VandenBerg's records as suggesting plaintiff's fibromyalgia diagnosis came "much later" than 1997 and that plaintiff was "under treatment with another physician," whose records were not available. (AR 19-20 (citing AR 314-25).) While it is not entirely clear that Dr. VandenBerg's March 1997 discussion of fibromyalgia constitutes a diagnosis, the ALJ's failure to discuss the report is troubling. Also, Dr. VandenBerg appeared to be referencing plaintiff's treatment with Chuck Bates. (*See* AR 314-15.) Bates, a Licensed Mental Health Counselor, treated plaintiff for fibromyalgia in

01 conjunction with Dr. Fairbrook and, contrary to the ALJ's statement, it appears that their
02 records were submitted for consideration.  (*See* AR 364-77.)

03 The evidence from and the ALJ's statements regarding Dr. VandenBerg reflect an ambiguity requiring further development.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered."; "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'").  The Court finds that, consistent with SSR 85-28 and 96-3p, the ALJ should have found the evidence in this case sufficiently unclear to determine the severity of plaintiff's impairments prior to the DLI.  *See*, *e.g.*, *Webb*, 433 F.3d at 687 ("Here, the medical evidence was sufficiently ambiguous to trigger the ALJ's duty because of the obvious vicissitudes in Webb's health, particularly the ways in which his conditions improved and worsened as a result of the afflictions and their treatments.").

As stated above, the evidence in this case, particularly that related to the relevant time period and with respect to work-related limitations, is quite minimal.  However, the Court concludes "that the ALJ lacked substantial evidence to find that the medical evidence clearly established [plaintiff's] lack of a medically severe impairment or combination of impairments[,]" and that "[t]he ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [her] claim was 'groundless.'" *Webb*, 433 F.3d at 688 (citing *Smolen*, 80 F.3d at 1290).

22 / / /

Medical Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence and, in particular, the opinions of Drs. Person-Nydam, VandenBerg, Bell, and Fairbrook. She associates this argument with the error at step two and otherwise refers generally to the rules associated with the assessment of physicians' opinions. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons; where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing.") (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) and *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The Commissioner asserts that, because the evidence at issue was neither significant, nor probative, the ALJ was not required to discuss it. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the Commissioner "need not discuss all evidence . . . , [r]ather, she must explain why 'significant probative evidence has been rejected.'") (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). He also again notes that the physicians did not assess any specific functional limitations.

Having decided that the record lacked evidence supporting the existence of a severe impairment, the ALJ did not engage in any significant discussion of the medical evidence as it related to specific providers. Again, there is very little medical evidence related to the period prior to plaintiff's DLI and, as noted by the Commissioner, there do not appear to be any assessment of limitations by those providers.

However, given the error at step two, the ALJ should, on remand, reconsider the medical evidence of record. In so doing, the ALJ should note that he may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

## Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec.*

*Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff asserts that the ALJ's failures at step two and in assessing the medical evidence taint the credibility analysis. She also takes issue with certain of the ALJ's statements. She contrasts evidence of her reported pain, muscle spasms, and trigger points (*see* AR 203-04), her December 2000 report of fatigue, and her August 2005 description of her nightmares as "last[ing] throughout her life[]" (AR 375), with the ALJ's statement that she "testified to chronic fatigue, but there was no evidence of complaints of fatigue on or before her alleged onset date[,]" and that she "reported unusual nightmares, but there is no evidence of this." (AR 19.) Plaintiff asserts that the fact that she on one occasion lied about a medical condition to get a job is not a convincing reason to reject all of her testimony. She further avers that neither the fact that she raised her children, nor engaged in the activities identified by the ALJ (*see* AR 19) are convincing reasons to reject all of her testimony.

The Commissioner asserts that the ALJ was not required to assess plaintiff's credibility after concluding that her medically determinable impairments could not have been reasonably expected to cause her alleged symptoms. *Smolen*, 169 F.3d at 599; *Nyman v. Heckler*, 779 F.3d 528, 531 (9th Cir. 1985); 20 C.F.R. § 404.1529(c). *See also* SSR 96-7p. He further argues that the ALJ in this case nonetheless provided specific, clear and convincing reasons to reject plaintiff's subjective complaints, including the type, dosage, and effectiveness of her medications, SSR 96-7p, inconsistency between her testimony of fatigue and the absence of complaints of fatigue on or before the alleged onset date, *Tonapetyan*, 242 F.3d at 1148, evidence that she lied, *Smolen*, 80 F.3d at 1284, and evidence of her daily activities, *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The Commissioner concedes that the ALJ did not

take plaintiff's comment to Dr. Fairbrook regarding her nightmares into consideration, but argues that any error is harmless. *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

While the ALJ did give a number of reasons in support of his credibility assessment, that assessment started with the presumption that plaintiff failed at the threshold step of the analysis given the absence of any severe impairments. (AR 19.) The reconsideration of the severity of plaintiff's impairments and the medical evidence thus warrants reconsideration of plaintiff's credibility on remand. Also, while otherwise harmless,[5] the ALJ should reconsider his statement regarding plaintiff's nightmares on remand.

<u>Lay Testimony</u>

As reflected above, the ALJ stated the following in rejecting the lay testimony: "The fact that there is no evidence to support any condition that might cause these reported symptoms prevents me from finding this testimony credible. She said that the claimant's main problem was upper body pain. There is no evidence to suggest a cause for upper body pain." (AR 20.) Because the ALJ's rejection of the lay testimony was contingent entirely on the step two finding and the associated assessment of the medical evidence, and because this matter should be remanded for reconsideration of those issues, the ALJ should also reconsider the lay testimony on remand. In so doing, should the ALJ again reject the lay testimony, he must provide

---

5 Plaintiff argued in her reply that the Court should not find the error harmless unless it can confidently conclude that no reasonable ALJ who did not make this error could have reached a different disability determination. *See Stout*, 454 F.3d at 1055. However, where an ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162-63 (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

reasons germane to the witness. *See Smolen*, 80 F.3d at 1288-89.

## Medical Expert

Plaintiff argues that the ALJ erred in failing to call a medical expert. She avers that, where there is some question as to the proper disability onset date, an ALJ is required to obtain input from a qualified medical expert. *See Armstrong v. Commissioner*, 160 F.3d 587, 589-90 (9th Cir. 1998) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991) and SSR 83-20). However, as argued by the Commissioner, this argument lacks merit.

SSR 83-20 discusses when an ALJ should call a medical expert to assist in establishing a disability onset date. The Ninth Circuit has held that if the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 *requires* the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *DeLorme*, 924 F.2d at 848 (emphasis added). *Accord Armstrong*, 160 F.3d at 590; *Morgan v. Sullivan*, 945 F.2d 1079, 1083 (9th Cir. 1991).

An application for DIB alone, as opposed to DIB *and* Supplemental Security Income (SSI) benefits, limits the inquiry to whether or not an individual was disabled on or prior to her DLI. *Compare Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Because Burch was only insured for disability benefits through September 30, 1999, she must establish disability on or prior to that date."), *with Armstrong*, 160 F.3d at 589-90 (ALJ was required to call a medical expert where disability was already established for SSI benefits and ALJ had to infer onset to determine DIB eligibility in light of DLI). As a general rule, therefore, it cannot be said that the ALJ in a DIB case has a duty per se to consider whether a claimant was disabled as of a later

date. *See*, *e.g.*, *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (in affirming ALJ's rejection of DIB claimant's testimony as to her physical condition during the eligibility period, the court noted that "'any deterioration in her condition subsequent to [the period of eligibility] is, of course, irrelevant[.]'") (quoting *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971)). However, if the ALJ for some reason found the evidence to support disability at a later date, SSR 83-20 could come into play. For example, in *DeLorme*, 924 F.2d at 847-48, the Ninth Circuit applied SSR 83-20 upon concluding that a psychiatrist's report dated after a claimant's DLI showed the claimant met the criteria for a listing at step three.

In this case, the ALJ appropriately considered evidence dated both before and after plaintiff's DLI, but determined that plaintiff was not disabled. While the ALJ may have erred in ending his consideration of the case at step two, he had no obligation to consult a medical expert given these circumstances. *See Sam v. Astrue*, 550 F.3d 808, 810-11 (9th Cir. 2008) ("Because the ALJ found that Sam was not disabled '*at any time* through the date of [the] decision' (emphasis added), the question of *when* he became disabled did not arise and the procedures prescribed in SSR 83-20, did not apply."; distinguishing *Armstrong* and *Morgan* wherein "there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date.") (citations omitted).

/ / /

/ / /

/ / /

/ / /

## **CONCLUSION**

For the reason set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this 29th day of September, 2011.

Mary Alice Theiler
United States Magistrate Judge